IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

IN RE:   David Frank McMellon and
         Emily Catherine McMellon,

                    Debtors.


STEEL OF WEST VIRGINIA, INC. and
SWVA, Inc.,

                    Appellants,

v.                                                CIVIL ACTION NO.   3:14-30548
                                                  BANKRUPTCY NO.    10-30169
DAVID FRANK McMELLON and
EMILY CATHERINE McMELLON,

                    Appellees.


**MEMORANDUM OPINION AND ORDER**

Pending before the Court is an appeal and a brief of objectors filed by Steel of West Virginia, Inc. and SWVA, Inc. (collectively "Steel") to the bankruptcy court's Order Allowing Trustee to Withdraw from Settlement Proposal with Steel of West Virginia and Order Permitting Trustee to Advance Claim against Steel of West Virginia.  For the following reasons, the Court **DENIES** Steel's objections and **REMANDS** this matter for further proceedings.

This appeal is the second time this case has been before this Court involving the bankruptcy of David and Emily McMellon.  On March 3, 2010, the McMellons initiated a voluntary petition under Chapter 7 for bankruptcy protection.  At the time, the McMellons filed a standard Statement of Financial Affairs and various schedules setting forth their assets and

liabilities. On June 16, 2010, the bankruptcy court discharged their debts. The case was closed on August 24, 2010.

Shortly after their bankruptcy case was closed, Mr. McMellon filed a wrongful discharge complaint in Cabell County Circuit Court against Steel. In turn, Steel moved to dismiss the action because Mr. McMellon had not disclosed the factual predicate for the claim in his bankruptcy proceedings. Thus, Steel argued he was judicially estopped from bringing his claim in state court.

In light of the motion, Mr. McMellon filed a motion to reopen his bankruptcy case to add his wrongful discharge claim to his schedule of assets. Over objection by Steel, the bankruptcy court permitted the case to be reopened. Steel appealed the decision to this Court.

Upon review, this Court found that there was substantial evidence that Mr. McMellon's failure to disclose his claim in the original bankruptcy proceedings was not inadvertent, and his motion to reopen his bankruptcy case was filed only in response to Steel's motion to dismiss the underlying claim. *In re McMellon*, 448 B.R. 887, 895 (S.D. W. Va. 2011). Given that it appeared Mr. McMellon had disregarded his duty to truthfully disclose his assets on the bankruptcy schedules, the Court held that his motion to reopen the bankruptcy case to add the claim should have been denied. *Id*. However, the Court also found that merely because Mr. McMellon should not be permitted to reopen the bankruptcy, it may be possible for the Trustee to bring the action on behalf of the debtors' creditors. *Id.*[1]

---

[1] The Court did not make a definitive ruling on the issue because, at that point, the Trustee

Upon remand, the Chapter 7 Trustee moved to reopen the case to pursue Mr. McMellon's civil action against Steel. The motion was granted. Thereafter, the Chapter 7 Trustee and Steel entered into an agreement, contingent on the bankruptcy court's approval, to settle Mr. McMellon's claims. In the agreement, Steel agreed to pay the bankruptcy estate "an amount equal to the LESSER of: (1) the sum of all timely filed, allowed unsecured claims and allowed administrative expenses [in the McMellon's bankruptcy case] OR: (2) $28,750.00. *Agreement and Release of Claims,* at 1, ECF No. 2-17, at 7. The bankruptcy court held a hearing on the Chapter 7 Trustee's motion to settle the claims on July 13, 2011, and it entered an Order taking the proposed settlement under advisement on July 18, 2011. ECF No. 2-21. The motion was opposed by the Debtor. The bankruptcy court never approved the compromise.

In the meantime, on June 14, 2011, the United States Trustee instituted a separate adversary proceeding against the McMellons to revoke their discharge. Thereafter, on February 14, 2013, the bankruptcy court signed and entered an Agreed Order between the United States Trustee and the McMellons to resolve the adversary proceeding. *Agreed Order Resolving Adversary Proceeding*, ECF No. 2-22. The Agreed Order provides that the McMellons will pay $46,500, to pay all scheduled unsecured claims, and the Chapter 7 Trustee will pursue the civil action against Steel. Any recovery from that lawsuit will be used to pay the Chapter 7 Trustee's commission and fees and any remaining money will be given to the McMellons. In the event there is no or an insufficient recovery from Steel, the McMellons agreed to guarantee the Chapter 7 Trustee's commission and fees. Upon payment of the $46,500, the adversary proceeding will be dismissed. All parties, including Steel, received notice of the Order on February 16, 2013.

---

had not sought to reopen the case.

On June 21, 2013, the Chapter 7 Trustee moved to withdraw from the settlement with Steel. ECF No. 2-23. On June 24, 2013, the United States Trustee also filed an application to retain counsel to pursue the action against Steel. Steel objected, arguing, inter alia, that this Court's Memorandum Opinion and Order does not permit the McMellons to benefit from the claims against Steel and Steel's proposed settlement would benefit the estate by paying all the Chapter 7 Trustee's outstanding fees and the commission. In addition, Steel suggested that withdrawing its compromise with the Trustee would merely result in risky litigation.

After holding hearings on the issues presented, the bankruptcy court entered an Order on October 31, 2014, allowing the Chapter 7 Trustee to withdraw from its settlement with Steel and permitting him to pursue a claim against Steel. The bankruptcy court noted that this Court did not preclude such an action for the benefit of the bankruptcy estate, which "includes unsecured creditors, the chapter 7 Trustee's administrative claims, and funds for the Debtors should all other claims be paid in full." *Order Allowing Trustee to Withdraw from Settlement Proposal with Steel of West Virginia and Order Permitting Trustee to Advance Claim Against Steel of West Virginia*, at 4, ECF No. 2-32. In addition, the bankruptcy court found that the United States Trustee's negotiations with the McMellons resulted in a better settlement than the agreement reached with Steel because the McMellons agreed to pay $46,500 from funds withdrawn from their retirement accounts, funds that were exemptible from their Chapter 7 case,[2] to pay all the creditors listed in their schedule, which was in excess of $44,000.00. In addition, the McMellons guaranteed payment of the Trustee's commission and fees, even if litigation against Steel is

---

[2] West Virginia Code § 38-10-4(j)(5) provides that debtors are permitted to exempt their funds in a Qualified Retirement Account and hold those assets separate.

-4-

unsuccessful. *Id*. at 4-5.   However, if litigation is successful and funds exceed what is necessary to pay the expenses of the Chapter 7 Trustee, the remaining funds will be used to pay back the McMellons the money they used to pay the unsecured creditors and any additional surplus funds will be distributed in accordance with bankruptcy law.   The bankruptcy court found the United States Trustee exercised a sound business judgment and agreed with him that the McMellon agreement was far superior then the Steel agreement as Steel only agreed to pay, at most, $28,750. The bankruptcy court also specifically found that the McMellons "have not purchased the Trustee's position and that the Trustee is obligated to utilize his best judgment as to how pursue the claim against Steel independent of the Debtors." *Id*. at 5.   The bankruptcy court further rejected Steel's contention that the McMellons are the only ones who benefit from the agreement. The bankruptcy court emphasized that the McMellons voluntarily agreed to use exempt funds that could not have been otherwise used to pay the claims of creditors. *Id*. at 6.   Given its decision that the Chapter 7 Trustee could pursue a claim against Steel, the bankruptcy court further held the Trustee could retain counsel.

On appeal, Steel insists the bankruptcy court erred because Mr. McMellon is the only potential beneficiary of litigation against Steel, and he should be prohibited from personally benefitting from the litigation because he fraudulently failed to disclose the claim in the earlier bankruptcy proceedings.   Upon review, the bankruptcy court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003) (citation omitted).   "Any mixed questions of law and fact are also reviewed de novo." *Id.* (citation omitted).

Initially, the Court affirms the bankruptcy court's finding that the McMellons are not the only beneficiaries of their agreement with the United States Trustee. As the McMellons have advanced funds sufficient to pay all the unsecured creditors in full, the McMellon agreement bestows a clear benefit upon those creditors. Certainly, the $46,500 the McMellons agreed to pay, which does not even include the guarantee of the commission and fees, is more than the $28,750, at most, Steel agreed to pay. As the United States Trustee has a fiduciary duty to maximize the funds to pay all creditors, the Court finds no error in allowing him to negotiate a better agreement then the never-approved agreement negotiated with Steel.[3]

Moreover, the bankruptcy court made it very clear that the Chapter 7 Trustee, and not the McMellons, is in control of any litigation against Steel. The Chapter 7 Trustee is not a nominal party, as suggested by Steel, rather the Chapter 7 Trustee has total authority over the claim. Moreover, as recognized by the bankruptcy court, there is nothing that prevents the Chapter 7 Trustee from negotiating a new agreement with Steel to settle the claim. Whether any funds will be obtained or available for disbursement under the bankruptcy laws is completely unknown at this point.

---

[3]The bankruptcy court found in its October 31, 2014 Order, that only $3,224.89 in claims were filed as of the bar date of April 25, 2011. *Order Allowing Trustee to Withdraw from Settlement Proposal with Steel of West Virginia and Order Permitting Trustee to Advance Claim Against Steel of West Virginia*, at 2. However, pursuant to Bankruptcy Procedure 3002(c)(5), "[i]f notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e) and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed." The unsecured claims in this case are in excess of $44,000.

Steel also argues the agreement reached between the United States Trustee and the McMellons merely resolves the Adversary Proceeding and provides that all the unsecured creditors will be paid by the McMellons. Thus, Steel asserts that, if it pays the costs of the Chapter 7 Trustee pursuant to its agreement, the McMellons are the only ones who will benefit by allowing the Chapter 7 Trustee to pursue litigation against Steel. However, Steel's reasoning ignores the actual terms of agreement between the McMellons and the United States Trustee. The agreement provides the McMellons will pay $46,500 to pay the unsecured creditors, in exchange "[t]he Chapter 7 Trustee shall pursue this cause of action and any recovery will be used to pay the Chapter 7 Trustee's commission and legal fees. Any monies remaining after payment of attorney fees and Chapter 7 administrative fees shall be paid to the defendants." *See Agreed Order Resolving Adversary Proceeding*, at 2 ECF No. 2-22. The agreement clearly contemplates more than the McMellons simply paying $46,500 to have the adversary proceeding dismissed. It expressly states that the Chapter 7 Trustee "shall pursue" the claim. *Id*. The Court cannot rewrite the agreement to remove the terms Steel finds objectionable. Moreover, as the Chapter 7 Trustee now controls the litigation, the McMellons may receive nothing, which is a risk they agreed to take in entering into the agreement. The Chapter 7 Trustee has total authority to negotiate a settlement with Steel to resolve any future ligation, but this Court will not step into the shoes of the Chapter 7 Trustee and tell him what the terms of that agreement should be.

Steel further argues that the McMellons should be judicially estopped from benefiting from their wrongdoing when they did not disclose the claim in their original filings with the bankruptcy court. The United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001), explained that judicial estoppel applies "[w]here a party assumes a certain position in

a legal proceeding, and succeeds in maintaining that position," and then, "thereafter, simply because his interests have changed, assume[s] a contrary position[.]" 532 U.S. at 749 (citation omitted). Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id*. (citations omitted). Judicial estoppel is applied "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749–50 (internal quotation marks and citations omitted). Although there is not a mechanical formula to use in deciding whether or not judicial estoppel should be applied when bad faith is evident, there are several factors courts should consider, which include:

> (1) whether the party's position is clearly inconsistent with its prior position; (2) whether a court has accepted the party's prior position; (3) whether the position was one of fact or law; and (4) whether the party taking the inconsistent position would gain an unfair advantage or impose an unfair detriment from such conduct.

*Williams v. Basic Contracting Servs., Inc.*, No. CIV.A. 5:09-CV-00049, 2009 WL 3756943, at *3 (S.D.W. Va. Nov. 9, 2009) (citing *Zedner v U.S.*, 547 U.S. 489 (2006) (other citations omitted)). As judicial estoppel is an equitable remedy, it is within the Court's discretion whether to apply the doctrine, after considering these factors and the specific facts and circumstances of the case before it. *Id.*; s*ee also New Hampshire,* 532 U.S. at 750-51 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.").

Initially, before this Court considers these factors, the Court reiterates that the Chapter 7 Trustee is a real party in interest and controls the litigation against Steel. Although the McMellons did not disclose the claim in their original bankruptcy proceedings, they no longer own

the claim. Instead, the claim is an asset of the estate, and the Court will not apply judicial estoppel principles to prevent the Chapter 7 Trustee from pursing the action on behalf of the estate. *See In re Satterfield*, No. 09-1102, 2010 WL 2928330, at *4 (Bankr. N.D. W. Va. July 26, 2010) (stating "no need exists to apply the judicial estoppel tests because the Debtor's Chapter 7 trustee will be substituted as a party plaintiff, and the fact that the Debtor may have taken an inconsistent position in her schedules and statements accompanying her bankruptcy petition does not implicate the rights of the trustee to pursue the claims on behalf of the bankruptcy estate. The Debtor's omitted claims became an asset of the bankruptcy estate when the debtor filed her petition"); *cf. Wiggins v. Citizens Gas & Coke Util.*, No. 1:03–cv–1882, 2008 WL 4530679 (S.D. Ind. Oct. 7, 2008) (applying judicial estoppel so that the Chapter 7 trustee could recover only on the undisclosed lawsuit to the extent to pay the proof of claims filed by creditors in the bankruptcy estate). However, even considering the above factors for judicial estoppel with respect to the McMellons, the Court declines to apply the doctrine.

In *Williams v. Basic Contracting Servs., Inc.*, No. CIV.A. 5:09-CV-00049, 2009 WL 3756943, at *3 (S.D.W. Va. Nov. 9, 2009), the Honorable Thomas E. Johnston was confronted with a similar situation as this case. In *Williams*, the debtor/plaintiff personally pursued a claim against her former employer, but she did not notify the bankruptcy court of her claim before her bankruptcy case was discharged. *Id.* at *1. The employer filed a motion for judgment on the pleadings or, in the alternative for summary judgment, based upon judicial estoppel. *Id.* Assuming the debtor/plaintiff acted in bad faith in failing to disclose the claim, the Court denied the motion.

In weighing the factors outlined above, the Court recognized that the debtor/plaintiff took inconsistent positions in her bankruptcy case and her civil action, and she had persuaded the bankruptcy court to accept her contention that she had no potential claims. *Id*. at *4. However, the Court found that any unfair advantage she possibly had in her bankruptcy case with respect to her creditors did not adversely affect her employer in that forum because her employer was not a creditor. Thus, the employer suffered no prejudice in the bankruptcy proceedings. *Id*. In addition, the Court found it significant that the debtor/plaintiff reopened the bankruptcy case. Although reopening the case does not excuse bad faith, "it does ameliorate the consequences somewhat." *Id*. The Court explained that "[t]he integrity of the judicial system suffers from the type of opportunism allegedly engaged in by [the debtor/plaintiff], but the consequences of such actions fall most squarely on the defrauded creditors." *Id*. On the other hand, reopening the bankruptcy case allows her creditors to share in any judgment recovered. If the employer violated the law, "it would be inequitable that it should receive a windfall at the expense of [the debtor/plaintiff's] creditors—who if [the employer] violated the law and [the debtor/plaintiff] acted in bad faith, would be the only blameless parties with an interest in the outcome of this matter." *Id*. (citations omitted). Accordingly, the Court declined to apply judicial estoppel.

In this case, weighing in favor of judicial estoppel, the Court finds that Mr. McMellon took inconsistent positions in the bankruptcy case and his civil action, and he did not inform the bankruptcy court of his potential claim until after Steel moved to dismiss his state court action. However, as in *Williams*, it was the McMellons' creditors, not Steel, who were prejudiced by the nondisclosure in the original bankruptcy proceedings. Therefore, the fact the bankruptcy

was reopened to allow the McMellons' creditors to be paid in full weighs strongly against applying judicial estoppel.

Although *Williams* and this case took divergent procedural paths following reopening, the policy interests of protecting the innocent creditors remain the same. In this case, the United States Trustee initiated an Adversary Proceeding and then negotiated a settlement with the McMellons to guarantee payment to all the unsecured creditors. Under the agreement, the Chapter 7 Trustee shall pursue litigation against Steel. Although Steel seeks to cap any recovery to payment of the Chapter 7 Trustee's commission and fees, no such cap is in the agreement and, indeed, the agreement contemplates the disbursement of funds if the amount exceeds what is necessary to pay the Chapter 7 Trustee's fees and costs. It is almost certain that, if such a cap was included in the agreement, the McMellons would have never used an exempt retirement account to guarantee the payment to all the unsecured creditors. Thus, if the United States Trustee had not negotiated the agreement he did with the McMellons, the unsecured creditors would be the ones who suffer and Steel, if it wrongfully terminated Mr. McMellon, would experience a windfall for any liability beyond the $28,750 it, at most, agreed to pay. Such a result would be inequitable. In entering into the agreement, the United States Trustee undoubtedly had the best interests of the entire estate at heart, and the McMellons understand they run the risk of recovering none of those funds. Under these circumstances, the Court will not judicially estop the Chapter 7 Trustee from pursuing the claim on behalf of the estate and allowing any excess funds recovered to be disbursed pursuant to bankruptcy law.

-12-

Accordingly, for the foregoing reasons, the Court **DENIES** Steel's objections, **AFFIRMS** the decision of the Bankruptcy Court, and **REMANDS** this action for further proceedings consistent with this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to the bankruptcy court, counsel of record, and any unrepresented parties.

ENTER: February 5, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE